Opinion filed June 5, 2014



In The

# Eleventh Court of Appeals

_____

## No. 11-13-00198-CR

_____

### THE STATE OF TEXAS, Appellant
### V.
### GREGORY ALAN WHITE, Appellee

**On Appeal from the 441st District Court**
**Midland County, Texas**
**Trial Court Cause No. CR41353**

## M E M O R A N D U M   O P I N I O N

Gregory Alan White was charged by indictment with the offense of tampering with physical evidence. White filed a pretrial motion to suppress the evidence acquired as a result of his allegedly illegal detention. The trial court granted White's motion. The State has filed this interlocutory appeal from the trial court's order. We affirm.

### I. *The Charged Offense*

A person commits the offense of tampering with physical evidence if, knowing that an investigation is pending or in progress, he alters, destroys, or

conceals any record, document, or thing with intent to impair its verity, legibility, or availability as evidence in the investigation. TEX. PENAL CODE ANN. § 37.09(a)(1) (West Supp. 2013). The offense is a felony of the third degree. *Id.* § 37.09(c).

## II. *Background Facts*

The trial court entered written findings of fact and conclusions of law after granting White's motion to suppress. They read as follows:

### FINDINGS OF FACT

1. Officer Jordan Oliver is an Officer with the Midland Police Department and was so employed on March 5, 2013.

2. This area is "known" to officers with the Midland Police Department as a high crime area. It is also known that individuals deal in narcotics in this same area.

3. Officer Oliver recently interacted with individuals who had weapons on them and had evaded from him in the same area.

4. Narcotics arrests have been made from the same area.

5. Officer Oliver saw a group of individuals in this area.

6. A "no loitering" sign is posted at this location.

7. It is common for drug dealers to use a lookout to announce police presence.

8. Officer Oliver saw [White] appear around the corner and appeared to be very nervous.

9. Officer Oliver attempted to conduct a pat down search for weapons.

10. [White] then began to walk away.

11. Officer Oliver then detained [White].

12. [White] refused to cooperate with a pat down for weapons and began to pull away from the Officer.

13. Officer Oliver saw [White] had tightly clenched his left fist.

14. Officer Oliver ordered [White] to open his hand because he feared [White] had a weapon or sharp object.

15. [White] refused.

16. Officer Oliver believed [White] was attempting to conceal or destroy the item by swallowing it.

17. [White] was arrested for Tampering with Physical Evidence and Possession of a Controlled Substance.

18. There were neither arrest warrants nor search warrants involved in this case.

19. On March 5, 2013, at approximately 1700 hours, Officer J. Oliver ("Officer") of the Midland Police Department, was conducting a walk-through of an area around 300 N. Lee Street, Midland, Texas.

20. The area the Officer was patrolling is an area known to the Officer as a high-crime area.

21. While patrolling, Officer observed an unknown female announce "one time, one time", which the Officer believed was an announcement for police presence.

22. The Officer observed the unknown female and a group of individuals gathered close to the female at this time. At this point, the Officer had not observed [White].

23. As the Officer approached the unknown female, from a different direction of the individuals and around a corner, [White] was walking toward the area of the Officer. Nobody disbursed as the Officer approached.

24. [White] was walking on a walkway, not the street.

25. The Officer did not question the unknown female nor did the Officer question the other people gathered in the area.

26. The Officer then turned the corner and made eye-contact with [White].

27. The Officer claims that [White] became nervous upon making eye-contact. After making eye-contact with the Officer, [White] turned from the direction of the Officer and began walking in a different direction. The Officer agreed with defense counsel that most individuals act nervous around law enforcement officers.

28. The Officer did not observe [White] run nor remain still nor sit down nor gather with any individuals. The Officer claims [White] was loitering, however, the Officer's testimony did not support the contention that [White] was loitering.

29. The Officer asked [White] to stop and [White] did not stop; [White] continued to walk in a direction away from the Officer.

30. The Officer believed [White] was crossing a street so the Officer decided to grab [White] from his hands and put them behind his back and detain [White]. The Officer admits to detaining [White] at this point.

31. The Officer then took [White] to the ground and handcuffed [White].

32. The Officer then claims to have seen [White] put a substance from his left hand into his mouth.

33. The Officer had [White] spit out the substance and the Officer recovered the substance, which the Officer believed to be the controlled substance, cocaine base.

4

34. The substance was seized by the Officer and logged in as part of the evidence in this case.

## CONCLUSIONS OF LAW

1. Officer Jordan Oliver is a Peace Officer pursuant to Section 2.12 of the Texas Code of Criminal Procedure.

2. A Peace Officer may lawfully stop and temporarily detain a person for investigation upon reasonable suspicion that the person has committed or is committing or is about to commit a crime or is connected with some criminal activity. Reasonable suspicion exists if the Officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person actually is, has been, or soon will be engaged in criminal activity.

3. "Perfectly lawful behavior can be sufficient to justify a temporary detention." U.S. v. Sokolow[,] 490 U.S. 1, 9 (1998).

4. The Fourth Amendment has been held not to require a policeman who lacks a precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow crime to occur or a criminal to escape. Circumstances short of probable cause for arrest may justify temporary detention for investigation and questioning. Thus, no showing of probable cause is required.

5. Officer Jordan Oliver did not have reasonable suspicion to conduct a stop and temporary detention to investigate . . . whether [White] had committed a crime, or was committing a crime, or was about to commit a crime based on the totality of the circumstances.

6. Officer Oliver did not provide ample testimony to support the detention of [White]. Said testimony was uncontroverted.

7. The State failed to meet its burden of proof by a preponderance of credible evidence to establish reasonable suspicion to detain [White].

8. The burden of proof in this case is with the State of Texas as the Officer did not have a warrant to detain, arrest, nor search [White].

9. The Officer did conduct an investigative detention of [White] at the point when the Officer approached [White] and grabbed [White's] hands and put them behind [White's] back. The Officer's conduct at this point would have communicated to a reasonable person that the person was not free to decline the Officer's requests or otherwise terminate the encounter.

10. The Officer's factual basis of nervousness, high-crime area, and announcement of "one time" did not equate to reasonable suspicion that would permit [White's] detention.

11. The unknown female's call of police presence is of minimal value as [White] was not observed by the Officer until the Officer approached the female and turned the corner, [White] was coming from a different direction than the gathered individuals, and [White] continued to approach until eye-contract was made with the Officer.

12. The Court finds that even though [White] may have exhibited nervous behavior, [White's] acts did not rise to the level of reasonable suspicion. [White's] nervous behavior is minimal nervous behavior as [White] simply continued to walk in a different direction but walk nonetheless. In addition, the Officer agreed that most innocent individuals act nervous around law enforcement.

13. [White's] presence in a high crime area called the "Flats" also did not alone nor with the other factors in this case create reasonable suspicion justifying [White's] detention. Case law supports and it is beyond dispute that being in a high crime area does not alone create reasonable suspicion justifying an investigative detention.

6

14. [White] was not loitering as the evidence showed that the Officer observed [White] walking in his direction, then walking away from his direction after making eye-contact. [White] did not sit down nor gather and remain in the area in question.

15. The arresting Officer did not have specific, articulable facts that, taken together with rational inferences from those facts, would lead him to reasonably conclude that [White] was engaged in criminal activity and would justify the Officer detaining [White].

16. Based on the totality of the circumstances, at the time of [White's] detention[,] the Officer did not have an arrest warrant, and search warrant, probable cause, nor reasonable suspicion to justify the detention.

17. The arresting officer's discovery of the substances and seizure of the substances in this case was the product of an illegal detention. Any tangible evidence seized in connection with [White's] detention and subsequent arrest was seized without warrant, probable cause or other lawful authority in violation of the rights of [White] pursuant to the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, Article I, Sections 9, 10 and 19 of the Constitution of the State of Texas.

18. In accordance with the U.S. Constitution, Texas Constitution, and Article 38.23 of the Texas Code of Criminal Procedure, the Court suppresses any and all tangible evidence seized by law enforcement officers or others in connection with the detention and arrest of [White] in this case, and any testimony by the Midland Police Department or any other law enforcement officers or others concerning such evidence. The white substances seized from [White] at the time of his arrest and any exams and testimony related to those substances are hereby suppressed and deemed inadmissible at trial of this case.

7

### III. *Issue Presented*

In a single issue, the State argues that the trial court erred when it granted White's motion to suppress because reasonable suspicion justified the detention of White for investigative purposes.

### IV. *Standard of Review*

We review a trial court's ruling on a motion to suppress for an abuse of discretion. *Arguellez v. State*, 409 S.W.3d 657, 662 (Tex. Crim. App. 2013). When, as here, the trial court makes explicit findings of fact, we afford those findings almost total deference as long as the record supports them, and we afford the same amount of deference to the trial court's rulings on mixed questions of law and fact if those rulings turn on an evaluation of credibility and demeanor. *State v. Castleberry*, 332 S.W.3d 460, 465–66 (Tex. Crim. App. 2011). We apply a de novo standard of review to pure questions of law and mixed questions of law and fact that do not depend on credibility determinations. *Martinez v. State*, 348 S.W.3d 919, 922–23 (Tex. Crim. App. 2011). The application of legal principles to a specific set of facts is an issue of law that is subject to de novo review. *Johnson v. State*, 414 S.W.3d 184, 192 (Tex. Crim. App. 2013). Thus, whether the totality of the circumstances under a given set of historical facts is sufficient to support an officer's reasonable suspicion to justify an investigatory detention is a legal issue that we review de novo. *Id.*; *Madden v. State*, 242 S.W.3d 504, 517 (Tex. Crim. App. 2007).

### V. *Analysis*

Police and citizens may engage in three distinct types of interactions: consensual encounters, investigative detentions, and arrests. *Johnson*, 414 S.W.3d at 191. Unlike an investigative detention and an arrest, consensual police-citizen encounters do not implicate Fourth Amendment protections. *State v. Woodard*, 341 S.W.3d 404, 411–12 (Tex. Crim. App. 2011); *Crain v. State*, 315 S.W.3d 43,

49 (Tex. Crim. App. 2010). The parties in this case do not dispute that White was at least detained when Officer Oliver stopped White from walking away, grabbed his hands, and put them behind his back. Accordingly, we will address whether the investigative detention of White was lawful under the Fourth Amendment.

Under the Fourth Amendment, a warrantless detention of a person that amounts to less than a full-blown custodial arrest must be justified by a reasonable suspicion. *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011). Reasonable suspicion exists if the detaining officer has specific articulable facts that, when taken together with rational inferences from those facts, lead the officer to conclude that the person detained is, has been, or soon will be engaged in criminal activity. *Brother v. State*, 166 S.W.3d 255, 257 (Tex. Crim. App. 2005). These facts must amount to more than a mere hunch or suspicion that criminal activity is afoot. *Cullum v. State*, 270 S.W.3d 583, 584–85 (Tex. Crim. App. 2008).

The reasonable suspicion determination is an objective standard made by considering the totality of the circumstances. *Ford v. State*, 158 S.W.3d 488, 492–93 (Tex. Crim. App. 2005). Circumstances may all seem innocent in isolation, but if they combine to reasonably suggest the imminence of criminal conduct, an investigative detention is justified. *Derichsweiler*, 348 S.W.3d at 914. Nevertheless, to support a finding of reasonable suspicion, the specific facts articulated by the detaining officer must show some unusual activity, some evidence that connects the detainee to the unusual activity, and some indication that the unusual activity is related to a crime. *Martinez*, 348 S.W.3d at 923. However, there is no requirement that the officer suspect that a particular offense is being committed; it is enough if the facts suggest that something of an apparently criminal nature is brewing. *Derichsweiler*, 348 S.W.3d at 916–17.

In this case, the State argues that the circumstances that support Officer Oliver's reasonable suspicion include the high crime area, the lookout's warning, White's nervousness, White's evasive behavior, and Officer Oliver's experience. According to the State, the trial court improperly disregarded White's nervousness and Officer Oliver's prior experience in similar situations when the trial court found that Officer Oliver lacked reasonable suspicion to justify the investigative detention.

The first factor relied on by the State to show reasonable suspicion is that White was walking in an area known to officers of the Midland Police Department as a high crime area. Officer Oliver knew that individuals deal narcotics in that area, known as the "flats"; he had recently interacted with individuals in the same area who had weapons on them and had evaded him. The fact that a detainee was seen or found in a high crime area alone may not serve as the basis for an investigative detention. *Crain*, 315 S.W.3d at 53. It is merely among the various factors that officers may take into account when evaluating reasonable suspicion under the totality of the circumstances. *Id.*

The second factor relied on by the State is that an unidentified woman apparently announced Officer Oliver's presence while the woman stood near a group of individuals on a corner. While a lookout's warning may be suspicious, that act must be supported by objectively reasonable facts that point to an individualized suspicion in the eventual detainee. *See Grimaldo v. State*, 223 S.W.3d 429, 433–34 (Tex. App.—Amarillo 2006, no pet.). Officer Oliver did not provide any facts that connected White to the lookout or to the group of individuals standing on the corner. Officer Oliver stated that he had not yet seen White when the unidentified woman announced his presence. It was not until after the woman alerted to Officer Oliver's presence that White, from a different direction of the individuals on the corner, came around a corner and walked toward the area of

10

Officer Oliver. Officer Oliver never questioned any of the individuals on the corner and did not observe any communication or interaction between those individuals and White. We therefore agree with the trial court's conclusion that the unidentified female's call of police presence is of minimal value when determining the level of individualized suspicion as to White. *See Martinez*, 348 S.W.3d at 923 (stating that detaining officer must articulate specific facts that connect detainee to unusual activity).

We now turn to the third and fourth factors relied on by the State: White's nervousness and evasive behavior. A suspect's nervousness or evasive behavior, without more, does not furnish the minimal level of objective justification needed for a detention. *Hamal v. State*, 390 S.W.3d 302, 308 (Tex. Crim. App. 2012). While it is relevant in determining reasonable suspicion for an investigative detention, nervousness and evasive behavior is not particularly probative because most citizens with nothing to hide will nonetheless manifest an understandable nervousness in the presence of a police officer. *Wade v. State*, 422 S.W.3d 661, 671 (Tex. Crim. App. 2013). Furthermore, as an individual has the right to refuse to answer the questions of a law enforcement officer and walk away unless the officer has reasonable suspicion of criminal activity, a suspect's action in walking away cannot be characterized as evading. *See Gurrola v. State*, 877 S.W.2d 300, 303 (Tex. Crim. App. 1994). In turn, such action, including a refusal to cooperate, may not give rise to reasonable suspicion without additional facts to justify an investigative detention. *See Wade*, 422 S.W.3d at 674–75; *see also Gurrola*, 877 S.W.2d at 302–03 (holding that the defendant's presence in area known for criminal activity and the defendant's walking away from police were insufficient to support a finding of reasonable suspicion); *Burton v. State*, No. 14-08-00445-CR, 2009 WL 838271, at *4 (Tex. App.—Houston [14th Dist.] Mar. 31, 2009, pet. ref'd) (mem. op., not designated for publication) (holding reasonable suspicion

11

existed where officer observed the defendant, in a parking lot in a high crime area, move away from officers *and* exchange something by hand with companion, who exhibited fidgety behavior).

Finally, the State relies on Officer Oliver's training and experience as an additional factor supporting reasonable suspicion. As with the other factors cited by the State, law enforcement training or experience may factor into a reasonable suspicion analysis, but reliance on special training is insufficient to establish reasonable suspicion absent objective support. *Ford*, 158 S.W.3d at 494. This is because objective facts, though meaningless to the untrained, when observed by trained law enforcement officers, can be combined with permissible deductions to create a legitimate basis for suspicion of a particular person. *Id.*

The State cites *Woods v. State*, 970 S.W.2d 770 (Tex. App.—Austin 1998, pet. ref'd), as a similar case that supports a finding of reasonable suspicion here. In *Woods*, a security guard and a deputy sheriff observed a woman holding a purse as she entered the Travis County Courthouse. 970 S.W.2d at 771–72. When the woman saw a metal detector and X-ray machine at the security entrance, she exhibited a surprised and scared look. *Id.* at 772. The woman then attempted to enter through an entrance outside the secured area but encountered a posting that stated all persons must be screened before entry. *Id.* The woman turned around and started to walk back out the courthouse doors, but the security guard confronted her. *Id.* The security guard became suspicious and told the woman not to leave without running her purse through the X-ray machine, but the woman disregarded his instruction and exited the courthouse. *Id.* The security guard followed and stopped the woman, and then required her to pass her purse through the X-ray machine. *Id.* The image from the machine revealed a firearm in the woman's purse. *Id.* Given these facts, the Austin Court of Appeals held that the

12

detention was lawful because the security guard's suspicion was reasonable. *Id.* at 774.

The State accurately asserts that both *Woods* and the case at hand involve a suspect who appeared to be nervous, ignored a call to stop from an officer, and attempted to walk away. In addition, the State purports to analogize the officer's experience from *Woods* to Officer Oliver's experience in this case. The security guard in *Woods* testified that he had seen others exhibit similar behavior to the woman's and that that behavior usually meant the person had something in her purse. *Id.* at 774. The security guard stated that he had seen a similar expression on others' faces before discovering a weapon or drugs on many occasions in the past. *Id.*

By contrast, in this case, Officer Oliver did not describe specific and substantial factual similarities between White's conduct and the conduct of others that had been found to possess drugs or weapons in the past. Officer Oliver stated that he had previously encountered a person who was found with a weapon in the same area after having evaded Officer Oliver. But we decline to conclude that White's walking away from Officer Oliver, without changing pace or exhibiting furtive gestures, constituted evasion. In addition, Officer Oliver admitted that he made the decision to stop White before White ignored the officer's command to stop. As we have previously stated, an officer may not gain the requisite reasonable suspicion based on a suspect attempting to terminate a consensual encounter, and nervousness alone is insufficient to justify an investigative detention. *See Gurrola*, 877 S.W.2d at 303. Thus, *Woods* is distinguishable from the case at hand.

In sum, the State relies on five factors to justify Officer Oliver's investigative detention of White, but none of these factors alone are sufficient to constitute reasonable suspicion. We recognize that the reasonable suspicion

13

analysis requires a determination based on the totality of the circumstances and that we may not analyze each circumstance in a vacuum. *See Hernandez v. State*, No. 11-08-00136-CR, 2009 WL 4931594, at *3 (Tex. App.—Eastland Dec. 17, 2009, no pet.) (mem. op., not designated for publication). However, given the lack of prominence attached to each of these factors and the lack of individualized objective facts to support a suspicion that White was engaged in criminal activity, we conclude that the combination of these factors did not create a legitimate basis for White's detention.

Officer Oliver did not see anything in White's hand and had no prior report concerning specific criminal activity on that day by someone resembling White. Moreover, Officer Oliver did not identify any specific activity by White that was indicative of drug dealing or weapon handling. White merely turned a corner in a high crime area and then nervously turned away from a police officer upon making eye contact with him. These facts, under the totality of the circumstances, do not reasonably suggest that White was engaged in criminal conduct. Accordingly, we hold that the trial court did not err when it granted White's motion to suppress on the ground that Officer Oliver lacked reasonable suspicion to justify the investigative detention. The State's sole issue is overruled.

## VI. *This Court's Ruling*

We affirm the order of the trial court.


MIKE WILLSON

June 5, 2014                                             JUSTICE

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.